UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AUTOMOTIVE EXPERTS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-1941** |
| **ST. CHARLES PONTIAC INC.** | **SECTION "B"(3)** |

### ORDER AND REASONS

**I. NATURE OF MOTION AND RELIEF SOUGHT**

Before the Court is Defendant St. Charles Pontiac, Inc.'s Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (Rec. Doc. 9). Plaintiff, Automotive Experts, L.L.C., opposes the motion (Rec. Doc. 12) and Defendant has filed a reply. (Rec. Doc. 13). For the reasons that follow,

**IT IS ORDERED THAT** Defendant's Motion is **GRANTED**.

**II. FACTS AND PROCEDURAL HISTORY**

Plaintiff, Automotive Experts, L.L.C., filed a Complaint in this Court on August 26, 2014, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 and alleging breach of contract for failure to pay on an open account by Defendant St. Charles Pontiac Inc. (Rec. Doc. 1). Plaintiff is a Louisiana limited liability company, with its registered office in the Parish of Orleans, State of Louisiana, which provides advertising and promotional services to automotive dealerships.

(Rec. Doc. 1 at 1). Defendant is a Delaware corporation licensed to do business in Illinois. (Rec. Doc. 9-2 at 1). It has one place of business located in the town of St. Charles, Illinois from which it sells new cars to customers in the Chicago market. (Rec. Doc. 9-2 at 1).

On or about November 14, 2013, Plaintiff and Defendant entered into two "Contracts of Retention" under which Plaintiff was to provide advertising and promotional services to Defendant in connection with certain upcoming sales promotion events.[1] (Rec. Doc. 1 at 2). Although the parties do not specify, it would appear that the first contract may have been entered into between Plaintiff and an affiliate of Defendant,[2] while the second contract was entered into between Plaintiff and Defendant directly. (See Rec. Doc. 12-1 at 1, 3). In any event, both contracts appear to have been signed by the same individual, above a legend reading "Nissan of St. Charles." (Rec. Doc. 12-1 at 2, 4).

According to Plaintiff's Complaint, it performed all services due under the contracts but was never paid by Defendant for the services rendered. (Rec. Doc. 1 at 3). On July 11, 2014,

---

[1] The contracts specifically state: ". . . Automotive Experts will provide highly skilled management team [sic] consisting of two managers who will be paid by Automotive Experts and a number of sales professionals on a temporary basis for the dates and terms of the Sales Promotion to assist and supplement Client's sales staff. . . ." (See Rec. Doc. 12-1 at 1, 3).

[2] Defendant notes in its Motion to Dismiss that it has "an affiliate, Pre-Owned of St. Charles, L.L.C., with locations in West Chicago and East Dundee." (Rec. Doc. 9-2 at 1). Defendant purports to sell new cars, while its affiliate sells used cars.

Plaintiff claims it sent a certified letter making demand pursuant to La. Rev. Stat. ann. § 9:2781 for payment of an invoice in the amount of $91,768.00 within 30 days of receipt. (Rec. Doc. 1 at 3). When Defendant allegedly failed to respond or pay within the designated period, Plaintiff instituted the instant breach of contract action seeking that amount in addition to reasonable attorney fees and costs. (Rec. Doc. 1 at 3).

**III. CONTENTIONS OF MOVANT**

Defendant contends this Court lacks personal jurisdiction over it for purposes of the instant suit. In support of this contention, Defendant argues it lacks the minimum contacts necessary to establish jurisdiction in Louisiana and has never availed itself of the privilege of conducting activities within Louisiana, nor invoked the benefits or protection of Louisiana law. (Rec. Doc. 9 at 1). Further, Defendant argues the contract at issue was negotiated and performed in Illinois, rather than Louisiana. Consequently, Defendant argues the Court has neither general nor specific personal jurisdiction over it and should dismiss the case. (Rec. Doc. 9 at 1). Alternatively, Defendant argues the Court should transfer the case to the appropriate federal district in Illinois for further resolution. *Id.*

**IV. CONTENTIONS OF OPPONENTS**

Plaintiff argues the Court has personal jurisdiction over Defendant for the reasons that: Defendant entered into a contract with Plaintiff, a Louisiana resident; Plaintiff executed the contract in Louisiana; Plaintiff retained services of other Louisiana entities in fulfilling its obligations under the contract; all marketing materials were printed and mailed from Louisiana; and the parties agreed the contract would be governed by and construed in accordance with the laws of the State of Louisiana. (See Rec. Doc. 12 at 2). Accordingly, Plaintiff argues "there is no question this Court has personal jurisdiction over St. Charles and it must answer for the torts it committed under Louisiana law." (Rec. Doc. 12 at 3).[3] Alternatively, Plaintiff contends Defendant waived objection to the Court's exercise of personal jurisdiction by failing to timely file an answer in these proceedings and by participating in a Rule 16 scheduling conference. (See Rec. Doc. 12 at 5).

## V. MOTION TO DISMISS STANDARD

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th Cir. 1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. *Id.* This court must resolve all

---

[3] The reference to torts is perplexing in light of the contractual nature of the instant cause of action.

4

undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id.* The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Jurisdiction may be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the court may exercise "general" jurisdiction over any action brought against that defendant. *Id.* at 414, 104 S.Ct. 1868 n. 9. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414, 104 S.Ct. 1868 n. 8. Because it is undisputed that Defendant has no continuous and systematic general business contacts with Louisiana, this case presents only the issue of specific jurisdiction.

A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has "minimum contacts" with the forum state such that imposing a

5

judgment would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154; *Luv N' care, Ltd. V. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). In *Nuovo Pignone v. STORMAN ASIA/MV*, 310 F.3d 374 (5th Cir. 2002), the Fifth Circuit "consolidated the personal jurisdiction inquiry into a convenient three-step analysis:"

> (1) Whether the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there;
>
> (2) Whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and,
>
> (3) Whether the exercise of personal jurisdiction is fair and reasonable.

*See also*, *Luv N' care, Ltd.*, 438 F.3d at 469. A forum state may create additional jurisdictional restrictions by statute, which bind the federal courts. However, Louisiana's so-called "long-arm" statute extends jurisdiction to the constitutional limits of due process, causing the inquiries here to fold into one. *Id.* (citing La. Rev. Stat. ann. § 13:3201(B)).

**VI. DISCUSSION**

   **A. Minimum Contacts**

In the context of the instant Rule 12(b)(2) motion, Plaintiff bears the burden of making a *prima facie* showing of personal jurisdiction. Thus, as a preliminary matter, Plaintiff

must establish both that Defendant had sufficient "minimum contacts" with Louisiana and that its cause of action "arises out of" those contacts.

As to the issue of minimum contacts, Plaintiff relies upon: (1) Defendant's entering into a contract with a Louisiana domiciliary, (2) the choice of law provision designating Louisiana law as applicable to the contracts, and (3) various other items relating to Plaintiff's relations with the forum.[4] These latter items reflect a misapprehension of the proper focus of the minimum contacts analysis. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the *defendant*, the forum, and the litigation." *Walden v. Fiore*, 134 S.Ct. 1115, 1121-22, 188 L.Ed.2d 12 (2014)(internal quotations omitted, emphasis added). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state." *Id.* The various instances of contact between Plaintiff and the forum in connection with the contract or otherwise are therefore inapposite to the minimum contacts analysis. Accordingly, it remains to be

---

[4] These include Automotive Experts, LLC: being domiciled in Louisiana; executing the contract in the State of Louisiana; retaining services from other entities domiciled in Louisiana in fulfilling the contractual obligations; as well as, marketing materials being printed in Louisiana and artwork and graphic design services being performed in Louisiana. (See Rec. Doc. 12 at 2).

determined whether the circumstances surrounding execution of the contract between the parties, and inclusion of a choice-of-law clause therein, are sufficient to establish minimum contacts between Defendant and the forum.

With respect to the negotiations leading up to execution of the contract, Plaintiff's Opposition and the declaration of Vincent Iacono, a manager for Plaintiff, state merely that: "St. Charles entered into a contract with the plaintiff, Automotive Experts, LLC." (*See* Rec Docs. 12 at 2, 12-2 at 1). Iacono expounds that no representative of Plaintiff visited Defendant's location and that "all negotiations regarding the contract and sales were done on the telephone." (Rec. Doc. 12-2 at 1). By contrast, in its Rule 12(b)(2) motion, Defendant asserts that: "In 2013, Automotive approached St. Charles in Illinois regarding the possibility of conducting sales events at St. Charles's location." (Rec. Doc. 9-2 at 2). Further, Defendant asserts that it executed its contract in Illinois, while stating that upon information and belief, Plaintiff never executed either contract. (Rec. Doc. 9-2 at 2). Plaintiff, however, avers that it executed the contract at its office in New Orleans. (Rec. Doc. 12-2 at 1). As to this issue, the Court notes that copies of the contracts attached to Plaintiff's Complaint are only signed by Defendant (See Rec. Doc. 1 at 5,7), while the copies attached to Plaintiff's Opposition to the instant motion

appear to be signed by both parties (See Rec. Doc. 12-1 at 2,4). While the Court must accept as true all the allegations in the complaint and resolve all factual conflicts in favor of the plaintiff, here, this merely compels the conclusion that all negotiations were conducted via telephone and that the parties executed the contracts at their respective locations. Further, Plaintiff has failed to introduce any evidence or arguments that conflict with Defendant's contention that Plaintiff initiated contact with it for purposes of negotiating the service agreements. Thus, these facts are insufficient to demonstrate that Defendant has "purposefully directed its activities at the forum state." *Burger King v. Radziewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

As to the terms of the contract itself, Plaintiff places particular emphasis on the inclusion of a choice-of-law clause applying the laws of the State of Louisiana. (See Rec. Doc. 12 at 4). Nevertheless, the Fifth Circuit has held that choice-of-law provisions, without more, are insufficient to create personal jurisdiction or put a defendant on notice that it might be subject to suit in a different state. *See Stuart v. Spademan*, 772 F.2d 1185, 1195 ("Choice-of-law provisions warrant some weight in considering whether a defendant has purposefully invoked the benefits and protection of a state's laws for jurisdictional purposes, although such a provision standing

alone would be insufficient to confer jurisdiction.")(internal citations omitted). Unlike a forum-selection clause, a choice-of-law provision itself does not evince the defendant's anticipation of being haled into the foreign forum. *Id.* Accordingly, the provision relating to the application of Louisiana law is merely one factor to be considered in determining whether sufficient minimum contacts exist for the Court to exercise jurisdiction.

In light of the foregoing, the Court must turn to the terms of the contracts and the performances contemplated thereunder in order to determine whether any further evidence supports minimum contacts in this case. The contracts state that Defendant "retains [Plaintiff] to provide the services listed *at [Defendant's] dealership*" for the specified term. (See Rec. Doc. 12-1 at 3, 5)(emphasis added). Thus, the parties' agreement anticipated that performance would be rendered by Plaintiff in Illinois. While Defendant agreed to certain payment obligations under the contract, there is no indication that any amount of performance by Defendant was required or even contemplated in Louisiana. This is in stark contrast with cases in which the contractual relationship was found to create sufficient minimum contacts with a foreign forum. In *Burger King*, *supra*, the Court concluded that the contract at issue had "substantial"

10

connections with the forum state. 471 U.S. at 480. In reaching this conclusion, the Court emphasized that the defendant:

> . . . entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with [the plaintiff] in Florida. In light of [the defendant's] voluntary acceptance of the long-term and exacting regulations of his business from [the plaintiff's] Miami headquarters, the 'quality and nature' of his relationship to the company in Florida [could] in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'

*Id*. at 480. By contrast, in *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, the Fifth Circuit concluded that insufficient contacts existed with the forum (Texas), where the plaintiff relied merely on the following facts:

> (1) Alaska Mechanical agreed to purchase specific goods to be manufactured in Texas; (2) payment for these goods was to be made in Texas; (3) before any written agreement was signed, extensive communications occurred between the parties, originating in Texas and Alaska; (4) officers of Alaska Mechanical traveled to Texas to "close" the deal; and (5) the contract was formally created in Texas because that was the place of the acceptance of Alaska Mechanical's offer by Hydrokinetics.

700 F.2d 1026, 1028-29 (5th Cir. 1983).[5] In the instant case, where the parties entered into contracts of short duration, under which no amount of performance was required or even

---

[5] The Court notes that *Hydrokinetics* was decided before *Burger King*, *supra*, however the minimum contacts analysis conducted therein remains valid following that decision, and the opinion was cited with approval by the Fifth Circuit as recently as *Parker v. Pro W. Contractors, L.L.C.*, 536 F. App'x 400, 401-02 (5th Cir. 2013).

11

contemplated in the forum, the mere facts that one of the parties was domiciled in the forum and that the contract applied the forum State's law are insufficient to establish the minimum contacts required for exercise of the Court's personal jurisdiction. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. . . . Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 134 S.Ct. at 1121-22 (internal citations omitted). Under the present facts it cannot be said that Defendant's conduct, which appears to be limited to contracting with a Louisiana domiciliary and engaging in limited telephone discussions, created a substantial connection with Louisiana. Further, the record indicates that Plaintiff sought out Defendant for purposes of confecting the agreement at issue, further belying any claim that Defendant purposely directed activity at Louisiana. Accordingly, the Court concludes that Plaintiff has failed to carry its threshold burden of making out a *prima facie* showing of minimum contacts necessary to support specific jurisdiction. The Court need not therefore address the issues of whether the instant cause of action arises out of those contacts or whether the exercise of jurisdiction would be fair or

12

reasonable under these circumstances. *Nuovo Pignone v. STORMAN ASIA/MV*, 310 F.3d 374 (5th Cir. 2002).

**B. Waiver**

The Court turns now briefly to Plaintiff's alternative argument, that Defendant waived its objection to personal jurisdiction by failing to timely file an answer in the instant proceedings, and in allegedly failing to object at the Rule 16 scheduling conference.

Waiver of the defense of personal jurisdiction is governed by Fed. R. Civ. P. 12(h)(1), which provides:

> (1) A party waives any defense listed in Rule 12(b)(2)-(5) by:
>    (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
>    (B) failing to either:
>       (i) make it by motion under this rule; or
>       (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

In the instant case, following the filing of Plaintiff's Complaint, Defendant sought and was granted an extension of time, to October 20, 2014, within which to answer or file other responsive pleadings. (See Rec. Doc. 6). It is true that Defendant did not comply with this deadline, failing to file the instant responsive pleading until December 23, 2014. In the interim, the parties held a Rule 16 scheduling conference with the Court on December 4, 2014. (See Rec. Doc. 7). Defendant

13

contends its failure to file a timely answer or other pleading was caused by its belief that Plaintiff would voluntarily dismiss this action after the Attorney General for the State of Illinois instituted an investigation into Plaintiff's performance under the contract at issue in this case and subsequently reached an agreement with Plaintiff prohibiting it from doing business in the State of Illinois.[6] (Rec. Doc. 13 at 6). While this was certainly a foolhardy tack to adopt, given the risk of default, the Court is aware of no legal authority (and the parties cite none) for treating a party's failure to timely respond as a waiver of the 12(b)(2) defense of lack of personal jurisdiction. *Compare Swanson v. City of Hammond, Ind.*, 411 F.App'x 913, 915 (7th Cir. 2011)("As long as defendants comply with the rules by raising their defenses in their first responsive pleading or consolidate their defenses in a pre-pleading motion under Fed. R. Civ. P. 12(b), they do not waive their Rule 12(b) defenses.")

Under the present circumstances, the only responsive pleading filed by Defendant was the instant motion to dismiss, which raised the defense of lack of personal jurisdiction. Thus, Defendant complied with the requirements of Rule 12(h)(1) as they pertain to waiver of that defense. Further, it is no answer

---

[6] Although it is immaterial for present purposes, the subject of the investigation appears to relate to allegations of violations of Illinois advertising regulations and potentially fraudulent behavior.

14

that counsel for Defendant participated in the Rule 16 scheduling conference, as counsel indicated at that conference that the instant motion was to be forthcoming. Mere participation in a scheduling conference will not suffice to waive a Rule 12(b) defense, particularly where the participating party indicates its intention to assert the defense at issue. *See, e.g., Rojek v. Catholic Charities, Inc.*, 2009 WL 3834013 (E.D. Mich. 2009)(finding that defendant did not waive defense of insufficient process by participating in scheduling conference and citing to Rule 12(h) as the source of the rules governing waiver). In light of the foregoing, the Court finds that Defendant did not waive its Rule 12(b)(2) defense by participating in the December 4, 2014 scheduling conference.

### C. Transfer

As to the issue of transfer, Plaintiff does not request this form of relief and the Court declines Defendant's invitation to transfer the matter to the United States District Court for the Northern District of Illinois. Although this would undoubtedly be a proper venue, given Defendant's statements pertaining to its business operations, the Court is unable to conclude that this is the appropriate action, absent any indication from Plaintiff. It may be that Plaintiff would prefer to attempt to establish personal jurisdiction in some other,

15

more convenient forum, and this Court's order will not prevent it from so doing.

## VII. CONCLUSION

Plaintiff failed to carry its burden of making out a *prima facie* showing of personal jurisdiction, specifically by failing to establish minimum contacts between Defendant and Louisiana. Plaintiff further failed to establish that Defendant waived its Rule 12(b)(2) defense either by failing to timely answer or by participating in the Rule 16 scheduling conference. Because the Court declines to transfer this case, **IT IS ORDERED THAT** Defendant's Motion is **GRANTED** and Plaintiff's claims against Defendant in this action are **dismissed without prejudice**.

New Orleans, Louisiana, this 25th day of February, 2015.

_____
UNITED STATES DISTRICT JUDGE